The **BARRETT LINE**

v.

**ALAMO CHEMICAL TRANSPORTA-TION COMPANY, the M/V MOLLY SMITH, Alfred Devall, dba Devall Towing & Boat Service and the M/V CRE-COW.**

**Civ. A. No. 11869.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

June 30, 1967.

Monroe & Lemann, New Orleans, La., for plaintiff.

Blades, Crain, Slator, Winters & Ross, Houston, Tex., Hall, Raggio & Farrar, Lake Charles, La., Jones & Jones, Cameron, La., for defendants.

EDWIN F. HUNTER, Jr., District Judge:

Plaintiff's cause of action arises from a collision between two towing vessels, the M/V MOLLY SMITH and the M/V CRECOW, at a bend near the forty-third mile of the Morgan City-Port Allen Canal. CRECOW had in tow a Barge M–611, of which plaintiff, The Barrett Line, was owner *pro hac vice,* and the barge was damaged in the collision. Plaintiff acted against both the Alamo Chemical Transportation Company, owner and operator of the MOLLY SMITH, and the Devall Towing and Boat Service, owner and operator of the CRECOW, to recover damages done to its barge.

## FINDINGS OF FACT

1. At all material times plaintiff, The Barrett Line, was owner *pro hac vice* of a certain barge, Barge M–611; defendant, the Alamo Chemical Transportation Company, was owner and operator of the M/V MOLLY SMITH; and defendant, Devall Towing and Boat Service, was owner and operator of the M/V CRECOW which was towing Barge M–611.

2. Barge M–611 was, on July 12, 1965, the lead barge of a tow being pushed by the CRECOW down the Morgan City-Port Allen Canal. It was a steel deck barge with the dimensions of 195' x 35' x 10', and was being towed under oral contract between plaintiff and defendant Devall Towing & Boat Service.

3. The MOLLY SMITH, pushing a tow upbound, collided with the down-bound tow of the CRECOW on July 12, 1965, at about 3:20 or 3:25 P.M. at a bend in the canal about 43 miles from Morgan City.

4. Barge M–611 suffered damage in the amount of $1,569.83.

5. Due to the terrain and to natural foliage, neither vessel was visible to the other as they approached the bend from opposite directions.

6. The MOLLY SMITH sounded no signal as she approached the bend.

7. The CRECOW sounded one long blast on her whistle as she approached the bend. She gave this signal slightly more than one-half mile from the bend. She then tried to contact any traffic which might have been around the bend on her radio, and received no reply.

8. The MOLLY SMITH in no way responded to CRECOW'S whistle or radio calls.

9. The CRECOW had no bow lookout on the lead barge of her tow. The posting of such a lookout would have improved CRECOW'S angle of vision around the bend, but only slightly. It would not have prevented the collision.

## CONCLUSIONS OF LAW

### I.

Do the Inland Navigation Rules, 33 U.S.C.A. §§ 151–232, or the Western Rivers Rules, 33 U.S.C.A. §§ 301–356, apply to vessels on the Morgan City-Port Allen Canal? The Western Rivers Rules apply to the waters of the Mississippi between its source and the Huey P. Long Bridge, and to all the tributaries emptying into it, and to their tributaries. 33 U.S.C.A. § 301. CRECOW insists that the Inland Rules should apply because the canal is not a tributary of the Mississippi River, but a part of the Intracoastal Waterway System. The logic of the argument seems to be that a canal, being artificial, cannot be a tributary even though it connects (as this one does) with the Mississippi, that therefore the Western Rivers Rules do not apply, and that the Inland Rules do apply under 33 U.S.C.A. § 154. The reasoning is

specious. It is difficult enough for a vessel's master to know whether or not the waters in which he navigates are ultimately tributaries of the Mississippi, in order to determine the navigational rules under which he sails. We should not add to the geographical expertise thus required of water commerce, the additional engineering and geological expertise necessary to distinguish artificial waterways from natural ones, or for that matter from natural but artificially improved ones. The canal in question connects with the Mississippi. We therefore conclude that it is a tributary thereof. The Western Rivers Rules apply to the Morgan City-Port Allen Canal. (See the Sunoil, D.C., 8 F.Supp. 512).[1]

## II.

■ The Western Rivers Rules require that, upon arriving within six hundred yards of a blind bend, a vessel give three whistle blasts to warn other vessels which may be around the bend, and that any vessel around the bend answer with a similar signal. 33 U.S.C.A. § 349(b). MOLLY SMITH was clearly at fault in this accident, as she gave no signal at all and did not respond to the signal given by CRECOW MOLLY SMITH must answer for damages to plaintiff's barge.

## III.

■ Was CRECOW also at fault because she gave essentially the Inland Rules bend signal—one long blast at a half-mile distance, 33 U.S.C.A. § 203—instead of the three-blast Western Rivers Rules signal? If so, she must bear half the reparations due to the Barge M-611. American Admiralty knows no compar-

ative fault, and where two vessels are both at fault damages are divided evenly.[2]

■ However, it is a rule of long standing that, where the fault of one vessel in a collision case is not contradicted and was in itself sufficient to account for the accident, she must raise clear and convincing proof that a fault of the other vessel contributed to the accident.[3] Here MOLLY SMITH's failure to signal or respond was fault of a gross nature. It is uncontradicted and in itself sufficient to account for the collision. Has MOLLY SMITH established that CRECOW is also at fault?

■ She urges that CRECOW's fault in sounding the Inland Rules signal instead of the Western Rivers signal, and in sounding the signal somewhat farther from the bend than even the Inland Rules' half-mile distance, should render CRECOW liable for half the damages to Barge M-611. CRECOW's fault was merely technical and did not contribute to the accident any more than her captain being out of uniform would have so contributed. The Western Rivers Rules do specifically call for three short blasts 600 yards from the bend. But their purpose is to give notice to approaching vessels that the signalling vessel is approaching. If the one long blast given by CRECOW from somewhat farther than a half mile went unheeded by MOLLY SMITH, surely three short blasts given precisely 600 yards from the bend would also have gone unheeded—though the latter signal was technically correct.

The required blind bend signal imports nothing except the presence of the signalling vessel. Had CRECOW given a port signal and then passed to starboard, for example, the fault might not have been merely technical. But here, the signal

---

1. Intertwined with the length of this canal are various natural waterways. Several of them serve as alternate routes to the canal. Is a vessel to change its navigation rules as often as every few minutes, as it employs alternate but natural waterways in making its way to Port Allen? The confusion to pilots would dwarf whatever bafflement attor-

neys face in thinking of a canal as a tributary.

2. Griffin on Collision, p. 558; THE CATHARINE, 17 How. (58 U.S.) 171, 15 L.Ed. 233 (1855).

3. Griffin on Collision, p. 506; P. Dougherty Co. v. United States, 3 Cir., 207 F.2d 626 (1952).

had no substantive meaning beyond mere notice, and for the effective communication of this meaning it was necessary only that the signal be audible to reasonably attentive ears.

Does MOLLY SMITH maintain that, since the signal was given some 300 yards farther upriver than the Western Rivers Rules require, she could not hear it? She has submitted no evidence to warrant that conclusion. It is doubtful that such evidence could be found. Since the Inland Rules prescribed a half-mile signal, it is fair to assume that whistles can be heard from a half mile away.

The signal given by CRECOW, though technically incorrect under the applicable navigation rules, was adequate for its purpose. CRECOW's deviation from the Western Rivers Rules did not contribute to the accident.

### IV.

Was CRECOW at fault for having no lookout on the bow, i. e., the bow of the line of barges she was pushing? 33 U. S.C.A. § 351 does indeed require that a vessel keep a proper lookout, and Pure Oil Company v. Vessel M/V Pennsylvania, D. C., 124 F.Supp. 121, did indeed hold a tug liable in a collision case for failure to post such a lookout.

That case, so heavily relied upon by MOLLY SMITH, proves to be a poor walking cane. It involved a collision in a fog so thick that visibility was less than fifty feet. Probably even the bow of the lead barge itself was not visible from the tug's bridge. Surely, a lookout on the bow was mandatory under those circumstances.

But here, even had the CRECOW placed a lookout on the lead barge, her angle of vision around the bend would have been improved only slightly. MOLLY SMITH had not shown, and we do not feel, that this slight advantage could have prevented the collision. No cases have been cited in which failure to post a lead barge lookout on a clear day was held to have contributed to a collision, and the Court concludes that it did not contribute to the collision in this case.

### CONCLUSION

One half mile from the bend CRECOW gave a signal that should have been heard. Eliciting no response, she unsuccessfully tried to contact MOLLY SMITH on her radio. CRECOW'S actions more than met the standards necessary to absolve her of any liability. That she gave the Inland Rules signal instead of the Western Rivers signal, and had no bow lookout posted, does not render her liable. Federal district court is no place for the strict rules of golf. The owners of the MOLLY SMITH, Alamo Chemical Transportation Company, must bear the entire damages to Barrett Line's Barge M–611.